UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRIAN SCOTT                                                    CIVIL ACTION

VERSUS                                                         NO. 10-2706

MARLIN GUSMAN - SHERIFF, ET AL.                                SECTION "B" (1)

### ORDER AND REASONS

Plaintiff, Brian Scott, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 asserting various claims arising from his incarceration within the Orleans Parish Prison system. He named as defendants Orleans Parish Sheriff Marlin Gusman, Sergeant Ruiz, and Sergeant Franklin. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

The defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[2] Plaintiff was ordered to file a memorandum in opposition to that motion no later than February 2, 2011;[3] however, he filed no such opposition.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue"

---

[1]   Rec. Doc. 17.

[2]   Rec. Doc. 22.

[3]   Rec. Doc. 24.

when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

As noted, plaintiff asserts various claims arising from his detention within the Orleans Parish Prison system. Specifically, the claims:

    1.     Pretrial detainees are housed with convicted inmates;

2. Inmates spend excessive periods of time inside, being allowed outside only for approximately forty-five minutes twice per week;

3. Plaintiff was not protected from sexual harassment and assault by other inmates;

4. The jail is overcrowded and understaffed;

5. Plaintiff has been the victim of fraud and theft;

6. The jail ventilation system is not working properly;

7. The jail is too noisy;

8. Incoming inmates are not screened for communicable diseases;

9. The plumbing breaks down;

10. The jail is too warm and humid; and

11. The inmates are not provided with an adequate diet.

In their motion, the defendants argue that plaintiff's claims have no merit. For the following reasons, this Court agrees.

## Mixed Housing

Plaintiff first challenges the prison's practice of confining pretrial detainees with convicted inmates. However, such a practice is not *per se* unconstitutional. As United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained:

> In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that
>
> > [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is

> 'reasonably related to the *institution's interest in maintaining jail security,*' *or physical facilities do not permit their separation. Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted ....* Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit*.

Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added). Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.

Significantly, the classification of inmates is an administrative function of the prison. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d. at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5 (E.D. La. Jan. 17, 2007) (footnote omitted); see also Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *4-5 (E.D. La. Oct. 23, 2009).  In the instant case, plaintiff offers no nonconclusory allegations that the housing decisions here were made indiscriminately without justification or that the decisions were not reasonably related to the institution's interest in maintaining jail security.  Accordingly, his conclusory and unsupported claim must be dismissed.

### Inadequate Outdoor Recreation

Plaintiff next complains that he is locked inside at all times except for being allowed outside for approximately forty-five minutes twice per week.  Even if that is true, it is not an atypical, significant deprivation in a prison setting, and it does not rise to the level of a constitutional violation.  See Argue v. Hofmeyer, 80 Fed. App'x 427, 429 (6th Cir. 2003); Hill v. Pugh, 75 Fed. App'x 715, 721 (10th Cir. 2003); Figueroa v. Dinitto, 52 Fed. App'x 522, 523 (1st Cir. 2002); Smith v. Romer, No. 96-1211, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997); Smith v. Beatty, No. 95-1493, 1996 WL 166270, at *1 (7th Cir. Apr. 5, 1996).  Even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional.  See, e.g., Chavis v. Fairman, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), aff'd, 51 F.3d 275 (7th Cir. 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010); Broussard v. Phelps, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La.

Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise). Therefore, this claim fails.

### Failure to Protect

Plaintiff next claims that prison officials failed to protect him from being sexually harassed and assaulted by other inmates. Specifically, he alleges in the complaint that he was sexually assaulted by an unidentified inmate in the shower on March 30, 2010. The inmate allegedly masturbated in plaintiff's presence and forced him to watch. After this federal complaint was filed, a second, unrelated incident occurred which plaintiff described in a subsequent filing.[4] Plaintiff alleges that in that second incident, which occurred on September 1, 2010, he was sexually assaulted and beaten by a group of unidentified inmates.

It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). However, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which

---

[4] Rec. Doc. 10, p. 4. Plaintiff's complaint was not formally amended to include a claim based on this second incident. However, the defendants addressed this incident in their motion, and therefore the Court will do likewise.

> the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted). Further, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998).

In the instant case, there is no allegation that there was an obvious, substantial risk to inmate safety of which the defendants were aware and to which they were deliberately indifferent. Plaintiff does not allege that there was a history of animosity between him and the inmates who assaulted him, or that even plaintiff himself, much less the defendants, had advance warning of the alleged assaults. The defendants simply cannot be said to have been deliberately indifferent in failing to protect against a potential harm of which they were unaware. Farmer v. Brennan, 511 U.S. 825, 844 (1994); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009).

Moreover, while prison officials must make reasonable efforts to provide a safe environment, they cannot ensure that all inmates will at all times be absolutely safe from random, unanticipated attacks. To require such "absolute safety" would ask the impossible of prison administrators:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

Campbell v. Anderson, 335 F.Supp. 483, 486 (D. Del. 1971); see also Farmer, 511 U.S. at 858-89 (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house

society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed,

> [t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals. Every day prison officials must make decisions as to whether a dispute between two prisoners is a genuine threat to their safety or merely a routine dispute that will soon be forgotten. Sometimes, an official makes an incorrect assessment regarding the seriousness of the situation and someone gets hurt; however, the official is entitled to qualified immunity and cannot be held liable if he made a good faith error.

McKnight v. Livingston, Civ. Action No. H-06-3674, 2007 WL 221926, at *2 (S.D. Tex. Jan. 25, 2007) (citations omitted).

In light of the foregoing, the undersigned finds that there is no basis for holding that the defendants violated plaintiff's rights by failing to prevent these random assaults which occurred without warning.

### Overcrowding and Understaffing

Plaintiff next claims that the jail is overcrowded and has insufficient staff to serve and protect the large number of inmates.

The mere fact that inmates are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional.");

Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138, at *7 (M.D. La. April 1, 2008) ("[T]he law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim, without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007). Considering the foregoing, plaintiff's allegations in this case are simply insufficient to state a cognizable, nonfrivolous overcrowding claim.

Plaintiff's claim of inadequate staffing fares no better. Such a claim is properly construed as a failure-to-protect claim. See, e.g., Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *5 (E.D. La. May 11, 2010) (claim that "prison staffing levels were insufficient to provide adequate security" analyzed as a failure-to-protect claim); Cruz v. Owens, Civ. Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim). However, plaintiff does not allege that he personally was particularly susceptible to being attacked or that prison officials had been made aware of and were deliberately indifferent to his need for additional protection. Instead, he offers nothing more than conclusory allegations that security was inadequate, and it is clear that such allegations do not suffice to state a federal claim. See, e.g., Rue, 2010 WL 1930936, at *6; Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

Fraud/Theft

Plaintiff next claims that his prisoner funds were stolen when he was fraudulently charged for commissary items he never received. However, even if that occurred, which the defendants dispute,[5] it is not actionable under federal law.

In Parratt v. Taylor, 451 U.S. 527 (1981), the United States Supreme Court held that where a state actor, through his random and unauthorized actions, *negligently* deprives a prisoner of his property, there is no due process violation *if* the state provides an adequate postdeprivation remedy. In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court extended that holding to *intentional* deprivations of property. In Daniels v. Williams, 474 U.S. 327, 330-31 (1986), the Supreme Court then overruled Parratt in part, holding that merely negligent deprivations of property simply do not implicate the Due Process Clause at all.

Therefore, it is of no consequence whether plaintiff is alleging that he was deprived of his funds through negligence or an intentional act, because "in neither instance does he state a valid § 1983 action for deprivation of property." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). If plaintiff is claiming negligence, his claim is barred by Daniels. If he is claiming intentional conduct, the claim is barred by Hudson, in that Louisiana law clearly provides him with an adequate postdeprivation remedy, i.e. a tort suit brought in state court. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. Louisiana Department of Public Safety and Corrections, 61 Fed. App'x 919, 2003 WL 1109690 (5th 2003); Arnold v. Inmate Accounts, 48 Fed. App'x 105, 2002

---

[5]   Rec. Doc. 22-1, pp. 8-9.

WL 31017153 (5th Cir. 2002). Accordingly, plaintiff may not pursue such a claim in this federal forum. If he wishes to assert a property deprivation claim, the appropriate forum is state court.

### Inadequate Ventilation

Plaintiff next complains that the jail ventilation system is inadequate. However, such conclusory allegations of inadequate ventilation, without more, implicate no federal constitutional right. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 321 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Parker v. Smith, No. 93-5542, 1994 WL 198944, at *2 (5th Cir. May 6, 1994); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *7 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009). Therefore, this claim fails.

### Noise Levels

Plaintiff also complains that the facilities are too loud and, as a result, he is being deprived of sleep. However, he does not allege that the noise is intentionally designed to deprive him of sleep, and his contentions are insufficient to state a constitutional claim. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 322 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Lacy v. Collins, No. 95-20033, 1995 WL 535114, at *4 (5th Cir. Aug. 8, 1995); Honshul v. Foti, No. 94-30723, 1995 WL 153425, at *3 (5th Cir. Mar. 30, 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *7 (E.D. La. May 11, 2010). Therefore, this claim likewise fails.

### Screening for Communicable Diseases

Plaintiff next complains that incoming inmates are not routinely tested for communicable diseases. However, it is clear that no such screening of all inmates is constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *4 (E.D. La. Oct. 1, 2009); Kennedy v. Gusman, No. 06-5274, 2007 WL 1302554, at *3 (E.D. La. May 2, 2007). Accordingly, this claim must also be dismissed.

### Plumbing Problems

Plaintiff also complains that the plumbing breaks down. However, the Constitution does not protect inmates from "life's occasional inconveniences," such as plumbing problems. Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *5 (E.D. La. May 11, 2010). Therefore, this claim also fails.

### Warm, Humid Conditions

Plaintiff next claims that the jail is too warm and humid. As a preliminary matter, the Court notes that warm, humid conditions are not uncommon in New Orleans and are by no means limited to the Orleans Parish Prison system. Moreover, although exposure to *extreme* temperatures is actionable in some circumstances, plaintiff's allegations fall far short of what is required to establish a constitutional violation. See, e,.g., Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 320 (5th Cir. 2008);[6] Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995);[7] LeBlanc v.

---

[6] In Johnson, the Fifth Circuit held:

> Johnson's allegations regarding extreme heat also failed to state a viable claim. While Johnson alleged that the temperatures were sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected

12

Gusman, Civ. Action No. 09-2786, 2010 WL 148290, at *3 (E.D. La. Jan. 12, 2010).  Accordingly, this claim must be dismissed.

### Inadequate Diet

Plaintiff next claims that the meals are inadequate and consist mainly of starches.  However, the United States Fifth Circuit Court of Appeals has noted that "[e]ven on a regular, permanent basis, two meals a day may be adequate."  Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999).  Moreover, the Constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health.  See Green v. Ferrell, 801 F.2d 765, 770-71 (5th Cir. 1986).  The constitutionality of prison food simply is not measured by its variety and

---

to these conditions numerous times; this is not sufficient to state a constitutional claim.

Johnson, 281 Fed. App'x at 320 (citations and quotation marks omitted).

[7] In Woods, the Fifth Circuit held:

Wood[s] alleges that his cell was inadequately cooled and that the high temperature, while uncomfortable in itself, also contributed to the plaintiff's health problems.  Specifically, the plaintiff contends that his sinus condition was aggravated by the cell's high temperature.  The defendants, in response, presented evidence that the portion of the jail housing prisoners in extended lockdown is equipped with fans used to circulate the air.
    The plaintiff argues that the district court erroneously granted the defendants' motion for summary judgment on this claim.  Woods, however, has failed to present medical evidence of any significance nor has he identified a basic human need that the prison has failed to meet.  While the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment.  Therefore, we affirm the district court's grant of the defendants' motion for summary judgment.

Woods, 51 F.3d at 581.

13

gastronomic appeal. See, e.g., Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981) (diet consisting "mainly of starch and carbohydrates with few vegetables and fruits," while "likely dull," is not constitutionally inadequate), overruled on other grounds, International Woodworkers of America v. Champion International Corp., 790 F.2d 1174 (5th Cir. 1986); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009). Considering the foregoing, plaintiff's allegations here are insufficient to state a cognizable, nonfrivolous claim, and so this claim must be dismissed.

### State Law Claims

Finally, the Court notes that plaintiff also indicates in the complaint that he is asserting claims under state law. However, in that plaintiff's federal claims are being dismissed, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

Accordingly,

**IT IS ORDERED** that the unopposed motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's federal law claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this fourteenth day of February, 2011.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**